UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

SULLIVAN WASHINGTON,
    Plaintiff,

    vs.                          No. 09-1076

WILLLARD O. ELYEA, et. al.,
    Defendants.

CASE MANAGEMENT ORDER

       This cause is before the court for consideration of whether the Plaintiff exhausted his administrative remedies as required for the claims in his complaint. The court granted in part and denied in part the Defendants' motions for summary judgement on the issue of exhaustion and set the case for a hearing pursuant to *Pavey v Conley,* 554 F3d. 739 (7th Cir. 2008); *see also* September 10, 2010 Summary Judgment Order. After the hearing, the court stated that it would consider the record as a whole when determining whether the Plaintiff exhausted all available remedies. The parties were given opportunities to submit additional briefing and all briefs have now been submitted to the court.

       The pro se Plaintiff, a state prisoner, filed his complaint pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated at Illinois River Correctional Center. The Plaintiff named nine defendants including Illinois Department of Corrections (herein IDOC) Director Michael Randle, Regional Director Cynthia Holbrock and Medical Director Willard Elyea; Acting Warden Kevin Gilson, Warden Austin Randolph and Assistant Warden Richard Birkey; Dr. Seth Osafo; Nursing Administrator Sherry Stokes and Wexford Health Sources, Inc.

       The Plaintiff alleged that the Defendants were deliberately indifferent to his serious medical condition in violation of his Eighth Amendment rights. His claim is against the Defendants in their individual and official capacities. Specifically, the Plaintiff claims he has type II diabetes and hypertension and suffered two strokes in 2008. Nonetheless, he says the Defendants denied him adequate medical care and intentionally disregarded excessive risks to his health. The Plaintiff says as a result, he suffered serious, irreparable injuries.

       In responding to the dispositive motion, the Plaintiff stated that he filed several grievances concerning his medical care. The court notes that the Illinois Department of Corrections has an established grievance process. *See* 20 Ill. Admin. Code §§ 504.800 *et seq.* An inmate is first required to speak with a counselor about the contested issue. 20 Ill. Admin. Code § 504.810(a). If the counselor does not resolve the problem, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The

grievance officer submits his recommendation to the Chief Administrative Officer who "shall advise the offender of the final decision in writing within two months after receipt of the written grievance, where reasonably feasible." 20 Ill. Admin. Code § 504.830(d). If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board (herein ARB) within 30 days after the date of the Chief Administrative Officer's decision. 20 Ill. Admin. Code § 504.850(a). The Director shall then review the findings and recommendations of the board and make a final determination within six month after receipt of the grievance. 20 Ill. Admin. Code § 504.850(f). When an inmate has received a copy of the Director's decision, the grievance procedure is complete. The Prison Litigation Reform Act requires that no §1983 lawsuit concerning prison conditions may be filed "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).

The court identified the following six relevant grievances in considering the motion for summary judgment:

> Grievance 1) filed on May 6, 2008, # 08-0561.
> Grievance 2) filed on May 11, 2008, # 08946.
> Grievance 3) filed on May 24, 2008, # 08-626.
> Grievance 4) filed on June 16, 2008, # 08-761.
> Grievance 5) filed on June 18, 2008, # 08-766.
> Grievance 6) filed on June 28, 2008, # 08-853.

The court initially held that the Plaintiff had failed to exhaust his administrative remedies for four of these grievances: # 1, 2, 3 and 5 as identified above. Therefore, the *Pavey* hearing was originally set to discuss grievances # 4 and 6.

Before addressing the evidence presented at the hearing, the court will review the contents of the six grievances:

**GRIEVANCE #1 (08-0561):**

On May 6, 2008, the Plaintiff filed this grievance stating that he was unable to recover from two stokes, because he was not receiving the prescribed exercise and treatment. Instead, the Plaintiff said he was confined to wheelchair. The Plaintiff asked to be transferred to a facility that could offer more appropriate care. On May 7, 2008, the grievance counselor indicated that he was "unable to resolve the grievance at this level" so it was forwarded to staff for a response.

The Plaintiff filed two more grievances while waiting for a final response to this first grievance. The Plaintiff received that response on July 8, 2008, when it was determined to be "moot." The grievance officer stated that medical staff believed the Plaintiff was getting the appropriate care and exercises at his current facility and the warden concurred.

The Defendants had no record of the Plaintiff appealing this decision to the ARB, and the

Plaintiff admitted in his affidavit that he did not appeal this first grievance. *See* Sept. 21, 2010 Order, p. 3.

**GRIEVANCE #2 (#08-946):**

Five days after filing his initial grievance, the Plaintiff wrote this grievance on May 11, 2008. The grievance is file stamped as received on August 2, 2008 and the counselor responded on August 6, 2008 that it has been submitted past the 30 day time period. The Plaintiff did not allege that he appealed this decision. Sept. 21, 2010 Order, p. 3.

**GRIEVANCE #3 (#08-626):**

The Plaintiff submitted a third grievance approximately two weeks after his first grievance on May 21, 2008. The Plaintiff again stated he was not getting the proper care for the strokes he suffered and asks to be transferred to a different facility. The grievance counselor responded by reminding the Plaintiff that his original grievance was still pending. The Defendants state that this grievance was returned to the Plaintiff since the issue was already being considered. The Defendants provided a copy of a June 5, 2008 memo sent to the Plaintiff stating that the issue was still pending from his first grievance filed on May 6, 2008.

The Plaintiff then appealed the response to this grievance on June 11, 2008. He again received a response from the ARB dated June 19, 2008, informing the Plaintiff that it was not necessary to file duplicate grievances since his initial grievance was still pending. Sept. 21, 2010 Order, p. 3-4. The Plaintiff admitted that he did not appeal this grievance.

**GRIEVANCE #4 (#08-761):**

On June 16, 2008, the Plaintiff filed this fourth grievance complaining that he was bedridden and staff had not responded to the call light by his bed. The Plaintiff said he had been left in his wheelchair for hours during the second shift. The Plaintiff says this is "a serious problem and it occurs regularly." *See* June 16, 2008 Grievance. He also claims on one occasion he lost consciousness because his blood sugar levels were so low, yet he was still left unattended for more than 30 minutes. In the relief requested, the Plaintiff asks for the staff to do their jobs.

On August 18, 2008, the grievance officer reviewed the Plaintiff's claims with staff and denied the grievance. The Warden concurred with this decision. The Plaintiff said that he requested an appeal to the ARB and the document does have his signature requesting an appeal on August 26, 2008.

**GRIEVANCE #5 (#08-766):**

On June 18, 2008, the Plaintiff stated that when Nurse Rumbler was taking him out of bed for lunch, he was dropped on the floor. A grievance counselor spoke to staff and they denied that the Plaintiff fell to the floor, but indicated that a hydraulic lift had been purchased to

assist staff in the future. The grievance was denied.  The Warden agreed and the Plaintiff claims he appealed this decision to the ARB.   The Plaintiff's signature is on the bottom on the form requesting an appeal on August 26, 2008.   The court still finds that this grievance relates to a specific issue and event on June 18, 2008 and the grievance is not relevant to the claims and Defendants before the court.

**GRIEVANCE #6 (#08-853):**

The Plaintiff's final relevant grievance was filed on June 28, 2008.  The Plaintiff states that he does not feel safe around Sherry Stokes and Cindy Holbrook because they continue to tell him he is receiving proper medical care and he knows that he is not.  The Plaintiff says that "no one is trying to help my efforts.  They are hindering my recovery and my health by blocking me and not transferring me to a better place."  *See* June 28, 2008 Grievance.   The Plaintiff asks to be transferred.

The counselor response on July 15, 2008, stated that the plaintiff had requested a transfer to Dixon Correctional Center, but it was denied on July 8, 2008, when it was determined the Plaintiff was appropriately placed.   The grievance was found to be moot on July 19, 2008 and the Plaintiff was informed that he could request a transfer again at the start of the new year.   The CAO concurred.  The Plaintiff claims he appealed this decision to the ARB.

The Defendants argue that the Plaintiff did not exhaust all remedies that were available to him.   In addition, the Defendants argue that any confusion or unavailable remedies were the fault of the Plaintiff, not IDOC or any Defendant.   The purpose of the exhaustion requirement is to allow prison officials the time and opportunity to respond to complaints internally before an inmate starts litigation. *Smith v Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001).  The Seventh Circuit has taken a strict compliance approach to exhaustion and requires an inmate to exhaust all available remedies.  *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002). In other words,  "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."  The Defendants agree with the court's previous ruling on grievances # 1-3 and 5, and therefore focus their discuss on Greivance #4 and #6.

The Defendants first argue that the grievances are not relevant to the claims or Defendants before the court.  For instance, the Defendants state that Grievance #4 concerns only problems with the call light.  The court disagrees.  The Plaintiff also states that there is an on-going problem with a lack of proper medical care and he is left to languish without attention.  In his relief requested section, the Plaintiff asks for the staff to do their jobs.  In Grievance #6, the Plaintiff again talks about an overall problem receiving medical care and a continued need for a transfer to an appropriate facility.

The Defendants also argue that the only Defendants specifically named in the grievances are Defendants Stokes and Bobrock in Grievance #6.   The court does not find this to be a compelling argument given the Plaintiff makes reference to his overall medical care and the

Seventh Circuits recently stated that failure to name a specific Defendant "was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Maddox v. Love*, 655 F.3d 709, 722 (7ᵗʰ Cir. 2011) *citing Jones v. Bock*, 549 U.S.199, 219 (2007)(providing early notice to those who might later be sued has not been thought to be one of the leading purposes of the exhaustion requirement); *Johnson*, 385 F.3d at 522("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.")

Therefore, the question before the court is whether the Plaintiff properly appealed either Grievance #4 or Greivance #6 to the ARB. The Chairperson of the Office of Inmate Issues, Sherry Benton testified during the *Pavey* hearing that the ARB had no record of receiving either grievance. In addition, Mail Room Supervisor Liz Ellis testified that the mail room photocopies the envelopes of all outgoing inmate legal mail. Ms. Ellis said she personally performed a search of the mailroom records from June through September of 2008, and found only two items in the Plaintiff's outgoing legal mail that were addressed to the ARB. One envelope was mailed on June 10, 2008 and the second was mailed on September 4, 2008. The Defendants say this matches with the ARB records which indicate that the only documents received from the Plaintiff were on June 11, 2008 (Grievance # 3) and September 5, 2008(a letter sent to the ARB).

The Plaintiff argues that he properly exhausted all available administrative remedies when he placed his grievances in the prison mail system. The Plaintiff testified that he did not have any specific memories involving the grievances in this case, but stated that he would have put any appeal in an envelope for prison staff to pick up. The Plaintiff says he has no control over whether or not staff members delivered his mail to the mail room. The Plaintiff therefore says his appeal was "filed" on the day he put it in the mail and points to a recent court decision to support this claim.

In *Schadel v Evans*, 2010 WL 2696456 at 3(C.D.Ill. July 7, 2010) the Plaintiff argued that he had submitted his grievance to prison authorities one day before a required deadline. Nonetheless, the document was not received by the ARB until after the deadline. The court stated that the date the Plaintiff gave his grievance to prison officials was the "easiest, most practical way to verify when that grievance was filed." *Id.* However, there was little evidence before the court in *Schadel* since the Defendants did not respond to the Plaintiff's argument that he had provided his grievance to prison officials before the deadline. The court specifically noted that generally prisons "have well-developed procedures for recording the date and time at which they receive papers for mailing" and therefore prison officials are well-positioned to "dispute a prisoner's assertions that he delivered the paper on a different date. " *Schadel v Evans*, 2010 WL 2696456 at 3 citing *Houston v Lack*, 487 U.S. 266, 270 (1988). That is exactly what the Defendants have done in the case before the court with the testimony and documentary evidence presented by witnesses Benton and Ellis.

The Plaintiff also argues that Mail Room supervisor could have easily overlooked his envelope and failed to photocopy it due to the large volume of mail and the limited staff. In addition, the Plaintiff says only the outside of an envelope is photocopied, but it may contain more than one grievance. However, if the Plaintiff's envelope was received in the mail room, that does not explain why it was not received by the ARB.

The Plaintiff further states that Benton testified that she only searched for grievances relevant to the named Defendants, so its possible she may have overlooked other appeals the Plaintiff sent concerning his healthcare. The court notes that in support of the initial summary judgment motion, Ms. Benton provided an affidavit in which she stated that she searched for any documents relating to the Plaintiff's health care and the named Defendants and she "did not locate any relevant grievance against these individuals *or involving this subject*." (Def. Mot, Benton Aff, p. 3, para. 6). Ms. Benton then attached documents received from the Plaintiff which included those that did not name any of the Defendants. The Plaintiff has not presented any other evidence that he successfully appealed some other grievance concerning his healthcare during the relevant time period.

The Plaintiff argues that even if he did not properly appeal a grievance to the ARB, he still exhausted all available administrative remedies. The PLRA, does not define "availability" for purposes of the exhaustion requirement. However, the Seventh Circuit has held that the "availablity of a remedy is not a matter or what appears on paper, but, rather, whether the paper process was in reality open for the prisoner to pursue." *Wilder v Sutton*, 2009 WL 330531 at 13 (7th Cir. Feb. 11, 2009) *citing Kaba v Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). For example, if a prison requires grievances to be filed on a particular form, but does not make that form available, the process is unavailable. *Dale v Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). In addition, threatening a prisoner with violence for attempting to file a grievance makes the process unavailable. *Mehphill v New York*, 380 F.3d 680, 688 (2nd Cir. 2004) Similarly, if a prisoner is told he must wait to file, and that wait makes his grievance untimely, the process in unavailable. *Brown v Croak*, 312 F.3d 109, 112 (3rd Cir. 2002). And prison officials who engage in affirmative misconduct, *Dole v Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), or fail to respond to grievances, also render the grievance process unavailable to an inmate. *Lewis v Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

The Plaintiff maintains that prison officials created significant barriers by failing to timely respond to his grievances, failing to review his claims on the merits and failing to recognize an ongoing harm. For instance, the Plaintiff says he did not receive a timely response to his first grievance. The Plaintiff filed his first grievance concerning his medical care on May 6, 2008. The grievance counselor responded on May 7, 2008 stating he would refer the issue to the medical staff for a response. On May 10, 2008 the grievance counselor found that the grievance was moot when health services staff members stated that the Plaintiff was getting the appropriate care and exercise. On July 8, 2008, the Chief Adminisgtrative officer concured with that recommendation. The facility responded to the Plaintiff's grievance within two months which is the time frame outlined in the administrative rules. *See* 20 Ill. Admin. Code § 504.830(d).

The Plaintiff also claims the Defendants did not provide a timely response to his second grievance. The Plaintiff's second grievance is dated May 11, 2008. However, the grievance is not stamped as received until August 2, 2008 and it was ultimately denied as untimely. The Plaintiff admits he did nothing further. He did not appeal this decision, nor did he tell prison officials that he had submitted his grievance earlier. *See* 20 Ill.Admin.Code 504.810(a)(untimely grievance may be considered if good cause shown).

The Plaintiff also argues that prison officials refused to consider Grievance #3 on the merits and instead simply stated that it was duplicative of Grievance #1. The two grievances both address the Plaintiff's dissatisfaction with his health care and his desire to be transferred. Furthermore, the Plaintiff was clearly advised that grievance officers did not see a significant distinction when they returned the documents with a memo stating that it was duplicative and they were still considering the Plaintiff's initial grievance. *See* 20 Ill Admin Code 504.830(d) (" Responses to duplicate grievances on issues that are currently being grieved may be combined in one response.") Prison officials then did provide the Plaintiff with a response on July 8, 2008.

The Plaintiff also says the Defendants failed to recognize an on-going harm. However, the cases the Plaintiff cites involve either a repeated failure by prison officials to respond to properly filed grievances, *Wilder v Sutton*, 2009 WL 330531 (7th Cir. Feb. 11, 2009) or instances where the ARB claimed a grievance was untimely after it had already been addressed on the merits. *Riccardo v Rausch*, 375 F.3d 521 (7th Cir. 2004). Neither is applicable to the case before the court. The Plaintiff filed a grievance concerning his medical care that was properly addressed. It was the Plaintiff's decision to file a second grievance five days later and then a third grievance a little more than two weeks later without giving the prison a chance to respond to his first grievance. Nonetheless, the grievance officials responded to each grievance and explained their response to each grievance.

Finally, the Plaintiff argues that the grievance process was unavailable to him because of his physical and mental condition after suffering two strokes. The Plaintiff says his first stroke occurred on January 4, 2008 and his second occurred four days later. However, the record before the court demonstrates that the Plaintiff filed grievances both before and after his strokes. In addition, the Plaintiff has provided no evidence that he sought to file a late grievance due to his temporary incapacity. *See* 20 Ill.Admin.Code §504.810(a)(untimely grievance may be considered if good cause shown); *Hurst v Hantke*, 634 F.3d 409, 412 (7th Cir. 2011)(physical incapacity is good cause for an untimely grievance.) The Defendants also state that staff assistance is available to inmate who requests it. *See* 20 Ill Admin.Code §504.810(c).

The court finds that the Plaintiff has failed to exhaust his administrative remedies before filing this lawsuit. Although the Plaintiff claims he put Grievances #4 and #6 in the inmate mail, there is no evidence to support that claim and the Defendants have presented credible evidence that the Plaintiff did not properly appeal these grievances. The court finds that based on the evidence presented in the motions for summary judgment, the *Pavey* hearing and the resulting briefs, that the Plaintiff did not properly exhaust his administrative remedies for Grievance #4 or

Grievance #6.   In addition, there is no credible evidence before the court that the Plaintiff was somehow prevented from exhausting his administrative remedies or that the administrative remedies were not available to him.  Prison officials responded to each grievance filed by the Plaintiff and clearly explained each response.  It is possible the Plaintiff was confused based on the number of grievances he filed, but his confusion was not caused by any action of the Defendants or prison officials.  Since the Plaintiff failed to meet the exhaustion requirement prior to filing this lawsuit, the court must dismiss this case.

**IT IS THEREFORE ORDERED** that this case is dismissed in its entirety based on the Plaintiff's failure to exhaust his administrative remedies as required before filing this lawsuit. *See*  42 U.S.C. §1997e(a).   The cause is terminated with the parties to bear their own costs.

Entered this 27th day of January, 2012.

**s/Harold A. Baker**

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE